

Signed and Filed: January 31, 2022

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 20-30711-DM |
| MARK E. MOON, | ) Chapter 11 |
| Debtor. | ) |
| E. MARK MOON and LORI MOON, | ) Adversary Case No. 20-03117-DM |
| Plaintiffs, | ) |
| v. | ) |
| MILESTONE FINANCIAL, LLC, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM DECISION REGARDING**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

The following decision deals with the complex world of California's usury law and its piecemeal exemptions. Incongruous as a result may be, ". . . we must take the usury law as we find it.  Indeed, the usury law is complex and is riddled with so many exceptions that the law's application

-1-

itself seems to be the exception rather than the rule." *Ghirardo v. Antonioli*, 8 Cal.4th 791, 807 (Cal. 1994) ("*Ghirardo*"). This appears to be both a case of first impression and one of the rare instances in which application of usury law must apply with no applicable exemptions.

## II. THE LOAN AND EXTENSION

On June 23, 2015, Plaintiffs Mark E. Moon and Lori Moon ("Moons" or "Plaintiffs") entered into a hard money loan agreement (the "Original Loan") with Defendant Milestone Financial, LLC ("Milestone") secured by the Moons' residence. At that time, Milestone did not have either a real estate broker license or a mortgage loan originator license and had been warned by the State of California about its lack of appropriate licenses.[1]  The Moons were represented by licensed real estate broker Marc Fournier.

One of the loan documents signed by the Moons was a certification that the loan was a business or investment purpose loan, meaning the protection found in the Truth in Lending Act or other California laws meant to protect residential home loan borrowers would not apply.[2]  The Original Loan was for $759,000

---

[1] In March and April of 2015, the California Department of Real Estate issued Cease and Desist Orders to Milestone and related parties. These Orders demanded in part that Milestone "desist and refrain from soliciting borrowers and/or performing services for borrowers or lenders in connection with loans secured directly or collaterally on real property" until such licenses were obtained. See Plaintiffs' RJN, Dkt. 40.

[2] Milestone makes much of the Moons' alleged misstatement of the purpose of the loans, and Moons make much of Milestone's alleged last-minute insertion of documents to make a residential loan

-2-

with an interest rate of 11.3%, a default interest rate of 17.3% plus late fees, and interest-only payments of over $7,000 per month until the balance came due in July 2017.

The Moons signed the Promissory Note. (Dkt. 1-26). Paragraph 2, titled "Payments," makes clear that the Original Loan is payable in full on the Maturity Date, and will include the entire principal, unpaid interest, and any other costs at that time.[3] Paragraph 4(a), titled "Late Charges; Default Rate" states that should the Moons fail to make a monthly payment within 10 days of the due date, a late charge (the "Late Charge") equal to 10% of the monthly payment will be assessed as a late charge, and **"it is extremely difficult and impractical to ascertain the extent of such damages and that the Late Charge represents a fair and reasonable estimate, considering all of the circumstances on the date of the Execution of this Note, of the costs the Holder will incur by reason of such late payment"** (emphasis added).

Paragraph 4(b) reiterates the difficulty of ascertaining the damages associated with the loss of timely payments as the reason for the default interest rate set by the Promissory Note.

---

appear to be a business loan on paper. Ultimately, the dispute over which party misled the other regarding the purpose of the loan is a matter waived by terms of the Extension.

[3] Paragraph 2(a) says, in part: "The entire unpaid Principal Balance, plus accrued interest and other amounts payable under the Loan Documents, shall be due and payable in full on the Maturity Date." Paragraph 2(c) says, in part: **"THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH HEREIN."** (Emphasis in original). It goes on to state that a substantial portion of the original principal sum will be due at maturity "IN THE FORM OF A BALLOON PAYMENT" (emphasis in original).

-3-

Nowhere in Paragraph 4 is there any language regarding a late charge on the balloon payment itself.

Paragraph 14, titled "Usury", contains a usury savings clause that limits the interest charged to the applicable statutory rate in the event that a court holds the amount of interest charged "is in excess of applicable law."

The Moons began to struggle with payments almost immediately. At some points, Milestone advanced the taxes and insurance on the residence. About one year after the making of the Original Loan, on August 26, 2016, the Moons and Milestone entered into an agreement titled "Settlement Agreement, Indemnity, and First Amendment to Promissory Note Secured by Deed of Trust" (the "Extension") (Dkt. 1-27, 28)[4]. The Extension supplemented and amended the Original Loan. It did not replace it.

Milestone still did not have its own real estate broker or loan originator license, and this time the Moons were not represented by Mr. Fournier or any licensed real estate broker in the making of the Extension. The Extension states that the unpaid principal balance of the loan is $902,525.34 in no fewer than three parts of the document. The Extension extended the Maturity Date of the loan to July 2019, slightly lowered the initial interest rate to 11.05% and increased the monthly

---

[4] At that time there was no real dispute between the parties, so it is unclear why Milestone chose to call the agreement a "Settlement". Perhaps calling it the "Forbearance" that it was invites invocation of the usury law that ultimately doomed its strategy.

-4-

payments and default interest rate.  Paragraph 8 of the
Extension, titled "Late Charges," stated:

> Should any payment due hereunder not be
> received on or before the TENTH (10th) day
> after its due date (the 'Grace Period'),
> Borrower shall immediately pay to Lender,
> without notice or demand by Lender, a late
> charge calculated at TEN PERCENT (10.00%) of
> any payment then due, <u>including the final
> (balloon) payment.</u>"

Dkt. 1-28, p. 2 (emphasis in original).

The charge on the final balloon payment was a new addition
to the Extension, not part of the Original Loan.  Within the
same paragraph, the basis for these late charges was made clear:

> Borrower agrees that Lender will incur
> administrative costs and other damages not
> compensated by payment of interest as a result
> of any payment not being made when due and
> acknowledges that calculation of actual
> damages is extremely difficult and
> impracticable and that the foregoing amount is
> a reasonable estimate of those damages.

After executing the Extension, the Moons promptly began
missing loan payments, though some payments were tendered at
various times.

In March 2019, the Moons sought to refinance their
residence with a different lender and requested a payoff amount
from Milestone.  Milestone provided a payoff quote of

-5-

$1,288,792.28, which included what was initially called a "prepayment penalty" of $115,615.06. In later filings Milestone notes the phrase "prepayment penalty" was in error, and the amount represents a late charge on the principal balance in accordance with the Extension. The payoff was much higher than what the Moons had anticipated, and they were ultimately unable to refinance the loan.

### III. <u>PROCEDURAL HISTORY</u>

On November 18, 2019, the Moons filed a complaint in San Mateo superior court against Milestone, William R. Stuart ("William Stuart"); Bear Bruin Ventures, Inc. ("Bear Bruin"); and Evergreen Escrow, Inc. ("Evergreen") (collectively, "Defendants"). On February 14, 2020, the Moons filed an Amended Complaint against the same Defendants. The Amended Complaint seeks damages against the Defendants on four counts of alleged wrongdoing:

1. Declaratory Relief to determine the rights and obligations of the Moons under the Extension;

2. Breach of Contract against Milestone;

3. Fraud against Stuart, Milestone, and Bear Bruin;

4. Intentional Interference with a Contract by Milestone and Evergreen.

While the lawsuit was pending, Milestone began foreclosure proceedings. After originally issuing a temporary restraining order, the state court eventually denied the Moons' Motion for Preliminary Injunction on September 4, 2020. On September 10, 2020, the Moons filed a Notice of Appeal but on the same day, Mark E. Moon filed a bankruptcy petition. On October 16, 2020,

-6-

the Moons removed the Amended Complaint to this court via this adversary proceeding. Evergreen was voluntarily dismissed on August 12, 2021.

After rounds of discovery disputes and an attempt at settlement via the Bankruptcy Dispute Resolution Program, the Moons filed a Motion for Partial Summary Judgment on September 9, 2021 (Dkt. 36) ("Moon MPSJ") and Defendants filed a Motion for Summary Judgment on September 16, 2021 (Dkt. 43) ("Defendant MSJ").

The Defendant MSJ seeks summary judgment on each of the four counts of the Amended Complaint. Anomalously, the Moon MPSJ does not seek partial summary judgment on the four enumerated claims of the Amended Complaint but seeks judgment on three claims not found in the Amended Complaint:

    1.    The Extension violated usury law[5];

    2.    Milestone demanded an illegal acceleration penalty from the Moons;

    3.    Milestone illegally charged multiple late fees on a single loan payment.

The Moons also belatedly presented a new theory of interference with an economic advantage (Dkt. 49).

---

[5] As noted above, the Moons did not raise the matter either as a claim or defense until the Moon MPSJ. While the Court recognizes that the Moons would not have been able to obtain relief by default on the usury claim in the Moon MPSJ because it was not initially plead as a claim, or part of a defense, all parties have briefed and treated the matter in such a way, and as such, the Court will consider the Defendants to have "entered the fray" and waived any objection on the issue of usury. For that reason, the matter is ripe for decision here and in the orders to follow.

-7-

The parties provided further briefing on the applicability of this court's decision in *In re Arce Riverside LLC*, 538 B.R. 563 (Bankr. N.D. Cal. 2015) ("*Arce*") at the court's request.

For the reasons explained below, the court has determined that as to the Moon MPSJ, the Moons should prevail on their claims regarding usury and late fees but fail on their claim regarding the acceleration penalty. As to the Defendant MSJ, Milestone should prevail as to the first claim for declaratory relief and the Moons' belated claim for interference with an economic advantage. As to the breach of contract, intentional interference with a contract, and fraud claims, disputes of material fact remain to be resolved, and summary judgment must be denied.

## IV. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

On a motion for summary judgment, the court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact as to any claim, part of claim, defense, or part of defense. *Simo v. Union of Needletrades, Indus. & Textile Employees,* 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Usury may be presented as either a claim or affirmative defense under California law. *See Korchemny v. Piterman*, 68 Cal. 5th 1032 (2021).

-8-

# V. __DISCUSSION__

## A. __Usury Law and Exemptions__

The Moon MPSJ asserts that by virtue of the Extension, Milestone charged interest in violation of the California usury law. The California Constitution fixes the maximum annual interest rate at 10% for "any loan or forbearance of any money, goods, or things in action." Cal. Const. Art. XV § 1. "The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." *Ghirardo* at 798, quoting *Thomas v. Hunt Mfg. Co.* 42 Cal. 2d 734, 740 (Cal. 1954). "The essential elements of usury are: (1) The transaction **must be a loan or forbearance**; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo* at 798 (emphasis added). On its face, therefore, the Original Loan violated the usury law unless an exemption saved it.

There are multiple exemptions to California's usury law, including loans made by nationally chartered banks and certain licensed businesses, Cal. Fin. Code § 22050, and pawnbrokers, Cal. Bus. And Prof. Code § 21626. These and other exemptions are not at issue here. The only exemption which is potentially applicable is Cal. Civ. Code § 1916.1 ("§ 1916.1"), which deals with loans or forbearances arranged by licensed real estate brokers:

-9-

For the purposes of this section, a loan or forbearance is arranged by a licensed real estate broker when the broker:

(1) acts for compensation or in expectation of compensation for soliciting, negotiating, or arranging the loan for another,

(2) acts for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business for another **and**

      (A) arranges a loan to pay all or any portion of the purchase price of, or of an improvement to, that property or business or

      (B) arranges a forbearance, extension, or refinancing of any loan in connection with that sale, purchase, lease, exchange of, or an improvement to, real property or a business, or

(3) arranges or negotiates for another a forbearance, extension, or refinancing of any loan secured by real property in connection with a past transaction in which the broker had acted for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase,

-10-

lease, or exchange of real property or a business.

Cal. Civ. Code § 1916.1 (emphasis added). "A forbearance is an agreement not to insist upon payment at the date of maturity of a debt, or the giving of further time to pay." *Arce*, at 571, citing *Buck v. Dahlgren*, 23 Cal. App. 3d 779, 785 (Cal. Ct. App. 1972). A forbearance can be agreed upon before the debt comes due, *see, e.g., Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527 (Cal. Ct. App. 2003) (forbearance arranged months prior to Maturity Date of loan).

Here, the Extension modified the Original Loan in some ways, including by extending the Maturity Date. It also lowered the interest rate slightly, but not below the maximum permitted by usury law if not eligible for an exemption. The Extension must be considered a forbearance even if the parties neglected to call it by its name.

"Note that there are only two instances of forbearance mentioned [in § 1916.1]: in connection with a sale and in connection with a past sale in which the broker acted as such." *Arce*, 538 B.R. at 574. Neither applies here. The statute "provides a restricted definition of the term "arranged" in relation to a forbearance." *The Law of Usury*, Miller and Starr California Real Estate 4th § 37:6. The statute painstakingly sets forth the instances in which a forbearance negotiated by a real estate broker would be exempt under usury law: when that broker was previously involved in arranging the original loan and that loan was in connection with a sale, lease, or other transaction, or when that broker had previously arranged for the

-11-

sale, lease or other transaction for compensation.
§ 1916.1(2)(B), (3).  Conspicuously absent from those instances is a scenario in which a forbearance is arranged on a simple loan of money secured by real estate, with no other sale, lease, or other transaction involved.  This court cannot create an exemption here to save Milestone.

Mr. Fournier, the licensed real estate broker involved in the making of the initial loan, was not involved in the Extension.  While Milestone belatedly attempts to argue that Carolyn Stuart, one of Milestone's owners, was a licensed broker involved in the creation of the Extension, this assertion is contradicted by Milestone's own prior documents, which show absolutely no involvement by Ms. Stuart in the making of the Extension.  No licensed real estate broker was involved in the making of the Extension.  However, whether a real estate broker (including Ms. Stuart) was involved in the making of the Extension is ultimately an immaterial fact, because the Extension is a forbearance of a type which falls outside of California's carefully crafted usury exemptions.

### i.   *Ghirardo* Involves a Credit Sale, Not a Forbearance

Milestone relies on *Ghirardo*[6] for the proposition that the Extension is neither a loan or forbearance and therefore outside the bounds of usury law.

_____

[6] Milestone also relies on *DCM Partners v. Smith*, 228 Cal. App. 3d 729, 278 Cal. Rptr. 778 (1991). *DCM* contains facts and reasoning nearly identical to *Ghirardo*.  Any analysis of *Ghirardo* here is equally applicable to *DCM*.

-12-

In *Ghirardo*, the defendant Antonioli[7] purchased real property in a seller-financed transaction (also known as a credit sale) in which a promissory note was executed in favor of the sellers. Antonioli then sold the property to another party, who then sold the property to plaintiff Ghirardo via another seller-financed transaction, in which Ghirardo would pay his seller, and that seller would then pay Antonioli. A payment dispute arose. Ghirardo and Antonioli came to a settlement which cut out the middleman and increased the interest rate. Later, Ghirardo sued Antonioli for charging a usurious interest rate on the new note. The *Ghirardo* court explained the negotiated promissory note fell outside usury law entirely, because the original transaction was a credit sale, not a loan or forbearance. In a credit sale, "the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing. This type of transaction . . . is not subject to the usury law because it does not involve a loan or forbearance." *Ghirardo* at 803 (quoting *Southwest Concrete Products v. Gosh Construction Corp*. 51 Cal. 3d 701, 705 (Cal. 1990)). Ghirardo argued the modified promissory note resulted in a forbearance. The court disagreed. Simply put, a re-negotiated credit sale is still a credit sale. It was not a loan.

Milestone likens the Extension to the type of settlement found in *Ghirardo*: an agreement which is not a loan or

---

[7] The Defendants were a married couple, the Antoniolis. The California Supreme Court referred to the Antoniolis in the singular, so this Court does so as well.

-13-

forbearance and therefore falls outside of usury entirely. However, the facts of this case are much closer to what this court previously encountered in *Arce,* which involved a simple loan secured by real estate, and a subsequent forbearance that ran afoul of § 1916.1. For the reasons set forth above, the Extension is likewise a forbearance. It was not the extension of a credit sale and is thus not comparable to *Ghirardo*. Milestone's assertion that the Extension is something other than a forbearance is incorrect. The most critical element—a loan of money followed by a forbearance—was what this was.

### ii. The Extension is Not Exempt Simply Because the Original Loan was Exempt

Milestone also relies on *Ghirardo* for the premise that an originally non-usurious transaction cannot be transformed into a usurious transaction at a later point. This again is a misstatement of *Ghirardo*, which involved a type of transaction that fell outside of usury because it was not a loan in the first instance. No modification of that agreement could transform the transaction into a loan or forbearance of a loan.

The reliance on *Ghirardo* is also an incorrect statement of law, since non-usurious loans *can* be transformed into usurious forbearances under certain circumstances. For instance, in *Arce*, an originally non-usurious loan was transformed into a usurious forbearance due to the increased interest rate and the absence of any statutory exemption such as involvement of a licensed real estate broker. Upon determining that the modification was a forbearance, this court concluded that the forbearance did not fall within the exemptions of § 1916.1.

-14-

Were that so, the increased interest would not have violated usury law. Despite the anomalous result, this court reasoned that the Legislature "knew what it was saying and meant what it said" when it limited the real estate broker exemption to forbearances only in very limited contexts. *Arce*, 538 B.R. at 674.

Here, the loan providing for interest above ten percent is unlike *Ghirardo* (a credit transaction) or *Arce* (originally below ten percent). The loan was not non-usurious, but rather a usurious loan subject to an exemption. The difference between a non-usurious loan and a loan subject to an exemption is slight but distinct, and not just a matter of semantics. One is outside of usury law entirely, and the other is within usury law but subject to an exemption to that law. Once the exemption (no real estate broker involved) ceased to apply, the exemption disappeared, and the transaction became subject to the full consequences of the usury law.

The California General Assembly enacted § 1916.1 on the basis that "real estate brokers are qualified by the state on the basis of education, experience, and examination, and that the licenses of real estate brokers can be revoked or suspended." Cal. Stats 1983 Ch. 307, Sec. 2. The legislature was careful to only exempt those forbearances that were in connection with sales, leases, or other exchanges of property.

The Extension does not fit within the exemption for forbearances set forth in § 1916.1. A loan broker was not involved in the making of the Extension, and even so, the Extension was not in connection with a sale, lease, or other

Case: 20-03117   Doc# 72   Filed: 01/31/22   Entered: 01/31/22 10:16:31   Page 15 of 25

type of exchange of property. It makes no difference that the Extension slightly lowered the interest rate of the Original Loan: the bright lines of § 1916.1 are clear. The law is equally clear that it does not matter if a creditor intended to stay within the usury exemption, and if the intent to loan a usurious amount of interest exists without an exemption, then the element of intent to commit usury has been met.

While the outcome may seem harsh, the court and the parties must keep in mind that the goal of all usury law is to prevent the making of usurious loans. Hard-money lenders have options if they are not eligible for the protection of § 1916.1. Milestone had the option to get licensed, lower the interest rate, or foreclose on the property, however unappealing and consequential that would have been to the Moons.

The Extension's interest rate and default interest rate both violated California's usury law. Due to Milestone's violation of usury law, Milestone is entitled only to the principal balance of the Extension minus the amount of usurious interest paid. *See, e.g., Westman v. Dye* 214 Cal. 28, 31–38 (1931); *District Bond Co. v. Haley* (1935) 2 Cal. 2d 308, 311; *Shirley v. Britt* 152 Cal. App. 2d 666, 670 (Cal. Ct. App. 1957); *Korchemny v. Piterman*, 68 Cal. App. 5th 1032, 1043 (Cal. Ct. App. 2021).

**B. The 10% Fee on the Balloon Payment**

Next, the Moons' MPSJ argues that the $115,615.06 charge associated with a 10% fee on the Moons' balloon payment, initially called an "acceleration penalty" by Evergreen, was an unlawful penalty. This penalty was not part of the Original

-16-

Loan but was inserted into the terms of the loan by the Extension. Milestone contends the fee was a bargained-for and reasonable estimated amount of liquidated damages.

Both parties frame the issue of whether the 10% fee on the balloon is permissible in the context of liquidated damages. Upon its previous finding of usury, the court must first consider whether such the 10% fee should be deemed to be part and parcel of the interest the court has found to be usurious. The court concludes that the fee should be deemed separate from the interest (and default interest) set forth in the Loan and the Extension.

"Interest is the compensation allowed by law or fixed by the parties for the use, forbearance, or detention of money." Cal. Civ. Code § 1915. Liquidated damages are a pre-set measure of damages agreed upon by parties to a contract "[t]o avoid uncertainty and the cost of litigation if a breach occurs." *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, 152 Cal. App. 4th 1106, 1115 (2007) (internal citations omitted). The court concludes that the liquidated damages provision of the Extension stands separately from the interest charged by the Extension. Even if the loan were not deemed to be usurious, the court would still need to determine whether the liquidated damages provision, which is pegged solely to the principal balance of the Extension, is permissible.

"A provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was

-17-

unreasonable under the circumstances existing at the time the contract was made." *Id.*, quoting Cal. Civ. Code § 1671(b).

"A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Krechuniak v. Noorzoy,* 11 Cal. App. 5th 713, 722 (2017) (*citing Ridgley v. Topa Thrift & Loan Ass'n,* 17 Cal. 4th 970, 977 (1998)). Whether the damages are reasonable under circumstances is a "question of law when the facts are undisputed and susceptible of only one reasonable interpretation." *Krechuniak* at 723.

In *Poseidon*, the parties executed a promissory note that provided for interest-only monthly payments, and a final balloon payment. The promissory note stated that because any late payments would cause the lender to incur costs that would be "difficult or otherwise impractical to assess," a 10% fee would be imposed on every late-paid installment. The note was silent as to whether this fee applied to the balloon payment when due. The court found that even though a balloon payment may be considered an "installment," the 10% fee as applied to the balloon payment would be an unenforceable penalty under Cal. Civ. Code § 1671(b).

The original Promissory Note was like *Poseidon*, providing for late charges only on installment payments. The Extension, drafted without a broker, modified the language to include a late charge on top of the balloon payment.

-18-

While the language of the liquidated damages clause in both the Promissory Note and in the Extension states that calculation of damages is extremely difficult, that does not explain why a new 10% charge on a hefty balloon payment would suddenly be necessary to make Milestone whole in the event of default. Milestone is fully able to calculate the unpaid principal it is owed and the advances in taxes and insurance it made. Milestone argues that the 10% fee also contemplates the lost points and profit it would have made had it been able to re-lend the money owed. This belated suggestion of damages does not account for the 10% being chargeable whether the Moons were one day late or many months late. *Dobson Bay Club IIDD, LLC v. La Sonrisa de Diena, LLC*, 242 Ariz. 108 (Ariz. 2017) (finding a 5% fee on a loan's balloon payment to be an unenforceable penalty).

Accordingly, the $115,615.06 is an illegal penalty under Cal. Civ. Code § 1671(b).[8]

## C. **Multiple Late Charges**

The Moon MPSJ alleges that Milestone violated Cal. Civ. Code § 2954.4, which addresses "late payment charges on real estate loans encumbering single-family owner-occupied dwellings." This law provides that "[a] charge may not be imposed more than once for the late payment of the same installment. . . For the purposes of determining whether late charges may be imposed, any payment tendered by the borrower shall be applied by the lender to the most recent installment

---

[8] The court also presumes, but need not decide, that the fee on the balloon is also an illegal usury amount, similar to the "bonus" that was disallowed as usurious in *Jones v. Dickerman*, 114 Cal. App. 357 (1931).

-19-

due." Cal. Civ. Code § 2954.4(a)-(b).  Loans arranged by a licensed real estate broker are exempt from this law. Sec. 2954.4(e).

Milestone does not dispute that its late fee practices would contravene § 2954.4, if not for the exemption provision of subsection (e).  Unlike § 1916.1, § 2954.4 does not provide for specific instances in which forbearances must be treated differently.

Thus, because the Original Loan undisputedly involved a real estate broker, § 2954.4 does not apply to the late fees charged on either the Original Loan or the Extension.

The court agrees with Milestone's assessment.  Even the Moons' Reply (Dkt. 61) indicates agreement with Milestone and states that "[t]here is *only one loan* in this case, the June 2015 $795,000 loan that is secured by the 2015 Deed of Trust. The September 2016 document by its terms, is an extension of that June 2015 loan.  There is only one loan and all the payments by the Moons are covered by § 2954.4." (Dkt. 61 at 13).

There is no factual dispute here.  Both parties agree that the Original Loan brokered by Mr. Fournier controls.

Accordingly, the court concludes as a matter of law that the late fee exemption of § 2954.4(e) applies to the Extension. Milestone is entitled to recover its unpaid late charges.

### D. **Declaratory Relief**

A party to a contract may seek declaratory relief in a California state court to determine each party's rights and obligations under a contract. Cal. Code Civ. Proc. § 1060.  This relief is sought by the Moons in the Amended Complaint.  Such

-20-

relief is too generalized when applied to the facts presented, and the types of rights and obligations which each party seeks to clarify are addressed by the rest of this decision. The Moons are not entitled to any recovery on their First Count of the Amended Complaint, and Milestone is entitled to partial judgment on that claim.

### E. Breach of Contract

"A breach of contract is the wrongful, i.e., the unjustified or unexcused, failure to perform the terms of a contract." *Chen v. Paypal, Inc.*, 61 Cal. App.5th 559, 570 (2021). The Amended Complaint alleges that Milestone breached its contract with the Moons "by demanding a payoff amount far in excess of the amount required by any contract, and demanding amounts that were illegal under the law" (Dkt 1-7, pg. 6).

The Extension entered by the Plaintiffs released any and all claims in existence prior to September 1, 2016. Any breach of contract relating to acts by Milestone prior to the Extension has been waived.

It is an as-yet unanswered question whether the payoff requested in 2019 was indeed in excess of what was owed by the Moons. Because the true amount of the payoff is unknown, and it is a factual question as to whether an incorrect payoff statement amounts to a breach on the part of Milestone, the court will deny the Defendant MSJ on that portion of the Second Count of the Amended Complaint.

### F. Fraud

The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of

-21-

falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004). The Moons allege Defendants committed fraud by inducing them to enter an Extension which represented more money than what the Moons owed to Milestone at the time and resulted in a too-high payoff amount in 2019. As stated above, the Moons knowingly released all claims related to actions taken by Defendants prior to September 1, 2016. However, the same material fact issue related to the breach of contract claim also remains for the fraud claim: whether in 2019 Milestone knowingly issued a false payoff amount to the Moons, and whether the Moons knew of or relied on the falsity of the payoff amount. The court will deny the Defendant MSJ on the Third Count of the Amended Complaint.

### G. Intentional Interference with a Contract

The elements of intentional interference with contract are "(1) a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004).

The Moons have made a showing that there is a factual dispute as to whether there was a valid contract between the Moons and the third party with which the Moons were seeking to refinance, and that production of such a contract is plausible. Because a material fact regarding the claim is in dispute, the

Case: 20-03117   Doc# 72   Filed: 01/31/22   Entered: 01/31/22 10:16:31   Page 22 of 25

court will deny the Defendant MSJ on the Fourth Count of the Amended Complaint.

**H. Intentional Interference with an Economic Advantage**

The Moons attempted belatedly to insert an additional claim for Interference with an Economic Advantage in their Opposition to the Defendant MSJ (Dkt. 49) in case the court finds there is merely a non-binding intention to enter into a contract. Because such a claim was not plead in the Amended Complaint, or even the Moon MPSJ, the Moons cannot prevail and must move forward only on their initially plead claim for Intentional Interference with a Contract. Milestone is entitled to partial summary judgment on that unnumbered claim.

**VI. DISPOSITION**

For the foregoing reasons:

A. The Moon MPSJ will be GRANTED on the usury claim and on the claim regarding the 10% acceleration charge on the balloon payment; in all other respects it will be DENIED. What the Moons have paid in interest will be credited to the principal and all accrued interest, at least as of the Maturity Date of the Extension, will be eliminated.

B. Because of the usury savings clause and the unique history of this case and the conduct of the parties, the court will not consider punitive or other damages.

C. After further briefing and argument, or consent by the parties, the court will determine what Milestone is entitled to by way of reimbursement of taxes, insurance and other advances or costs. This would result in

-23-

amount owing as of the July 31, 2019 Maturity Date of $902,52.34 MINUS interest actually paid through July 31, 2019, PLUS insurance, taxes and other costs advanced by Milestone.

D.   After further briefing and argument, or consent by the parties, the court will determine the amount, if any, of interest accrued and owing after the Maturity Date of the Extension.

E.   The Milestone MSJ will be GRANTED, in part, on the claim for late charges and on the First Count of the Amended Complaint.

F.   The Milestone MSJ will be DENIED as to the Second, Third, and Fourth Claims of the Amended Complaint.

G.   After further briefing and argument, or consent by the parties, the court will issue orders consistent with the foregoing.

**END OF MEMORANDUM DECISION**

<u>COURT SERVICE LIST</u>

ECF Recipients