# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Francisco)
## Adversary Proceeding #: 20–03117

*Assigned to:* Judge Dennis Montali
*Lead BK Case:* 20–30711
*Lead BK Title:* Mark E. Moon
*Lead BK Chapter:* 11
*Demand:*
  *Nature[s] of Suit:*

*Date Filed:* 10/16/20
*Date Removed From State:* 10/16/20

| | | |
|---|---|---|
| | 01 | Determination of removed claim or cause |
| | 91 | Declaratory judgment |
| | 21 | Validity, priority or extent of lien or other interest in property |

---

*Plaintiff*
————————————————
**E. Mark Moon**
11 Mandalay Court
Redwood City, CA 94065
SSN / ITIN: xxx–xx–0422

represented by **John P. McDonnell**
Law Offices of John P. McDonnell
295 89th Street, Ste. 200
Daly City, CA 94015
650–991–9909
Fax : 650–449–7789
Email: jpmcdon@aol.com
*LEAD ATTORNEY*

**Cathleen Cooper Moran**
Moran Law Group, Inc.
643 Bair Island Rd. #403
Redwood City, CA 94063
(650) 694–4700
Email: ecf@moranlaw.net

---

*Plaintiff*
————————————————
**Lori H. Moon**
11 Mandalay Court
Redwood City, CA 94065

represented by **John P. McDonnell**
(See above for address)
*LEAD ATTORNEY*

**Cathleen Cooper Moran**
(See above for address)

---

V.

---

*Defendant*
————————————————
**Milestone Financial, LLC**
4970 El Camino Real #230
Los Altos, CA 94022

represented by **Harris L. Cohen**
Harris L. Cohen, PC
5305 Andasol Ave.
Encino, CA 91316
(818) 905–5599

1

Email: hcohen00@aol.com

**Lars T. Fuller**
The Fuller Law Firm
60 N Keeble Ave.
San Jose, CA 95126
(408)295–5595
Email: Fullerlawfirmecf@aol.com

**Bernard Kornberg**
Practus LLP
58 West Portal Ave
Ste Pmb 782
San Francisco, CA 94127
341–234–6629
Email: bernard.kornberg@practus.com

*Defendant*
——————————————————————
**William R. Stuart**                          represented by **Harris L. Cohen**
4970 El Camino Real #230                              (See above for address)
Los Altos, CA 94022

                                               **Lars T. Fuller**
                                               (See above for address)


*Defendant*
——————————————————————
**Bear Bruin Ventures, Inc.**                  represented by **Harris L. Cohen**
William Robinson Stuart                               (See above for address)
4970 El Camino Real Suite 230
Los Altos, CA 94022                            **Lars T. Fuller**
                                               (See above for address)


*Defendant*
——————————————————————
**Evergreen Escrow, Inc.**                     represented by **Evergreen Escrow, Inc.**
1016 57th St. E #100                                  PRO SE
Sumner, WA 98390
*TERMINATED: 08/12/2021*

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 01/31/2022 | | 72 | Memorandum Decision Regarding Cross–Motions for Summary Judgment (RE: related document(s)36 Motion for Summary Judgment filed by Plaintiff E. Mark Moon, Plaintiff Lori H. Moon, 43 Motion for Summary Judgment filed by Defendant Milestone Financial, LLC, Defendant William R. Stuart, Defendant Bear Bruin Ventures, Inc.). (ds) (Entered: 01/31/2022) |
| 04/27/2022 | | 81 | Order on Cross–Motions for Summary Judgment (Related Doc 36), Granting in part, Denying in part Motion for Summary (Related Doc 43) (lp). Related document(s) 72 Memorandum Decision (Entered: 04/27/2022) |
| 05/25/2022 | | 88 | Judgment for Plaintiffs (RE: related document(s)1 Complaint filed by Plaintiff E. Mark Moon, Plaintiff Lori H. Moon). Case Management Action due after 6/8/2022. (lp) (Entered: 05/26/2022) |



Signed and Filed: January 31, 2022

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 20-30711-DM |
| | ) |
| MARK E. MOON, | ) Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |
| E. MARK MOON and LORI MOON, | ) Adversary Case No. 20-03117-DM |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MILESTONE FINANCIAL, LLC, *et* | ) |
| *al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM DECISION REGARDING**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The following decision deals with the complex world of California's usury law and its piecemeal exemptions. Incongruous as a result may be, ". . . we must take the usury law as we find it.  Indeed, the usury law is complex and is riddled with so many exceptions that the law's application

-1-

itself seems to be the exception rather than the rule." *Ghirardo v. Antonioli*, 8 Cal.4th 791, 807 (Cal. 1994) ("*Ghirardo*"). This appears to be both a case of first impression and one of the rare instances in which application of usury law must apply with no applicable exemptions.

## II. THE LOAN AND EXTENSION

On June 23, 2015, Plaintiffs Mark E. Moon and Lori Moon ("Moons" or "Plaintiffs") entered into a hard money loan agreement (the "Original Loan") with Defendant Milestone Financial, LLC ("Milestone") secured by the Moons' residence. At that time, Milestone did not have either a real estate broker license or a mortgage loan originator license and had been warned by the State of California about its lack of appropriate licenses.[1] The Moons were represented by licensed real estate broker Marc Fournier.

One of the loan documents signed by the Moons was a certification that the loan was a business or investment purpose loan, meaning the protection found in the Truth in Lending Act or other California laws meant to protect residential home loan borrowers would not apply.[2] The Original Loan was for $759,000

---

[1] In March and April of 2015, the California Department of Real Estate issued Cease and Desist Orders to Milestone and related parties. These Orders demanded in part that Milestone "desist and refrain from soliciting borrowers and/or performing services for borrowers or lenders in connection with loans secured directly or collaterally on real property" until such licenses were obtained. See Plaintiffs' RJN, Dkt. 40.

[2] Milestone makes much of the Moons' alleged misstatement of the purpose of the loans, and Moons make much of Milestone's alleged last-minute insertion of documents to make a residential loan

-2-

with an interest rate of 11.3%, a default interest rate of 17.3% plus late fees, and interest-only payments of over $7,000 per month until the balance came due in July 2017.

The Moons signed the Promissory Note. (Dkt. 1-26). Paragraph 2, titled "Payments," makes clear that the Original Loan is payable in full on the Maturity Date, and will include the entire principal, unpaid interest, and any other costs at that time.[3] Paragraph 4(a), titled "Late Charges; Default Rate" states that should the Moons fail to make a monthly payment within 10 days of the due date, a late charge (the "Late Charge") equal to 10% of the monthly payment will be assessed as a late charge, and **"it is extremely difficult and impractical to ascertain the extent of such damages and that the Late Charge represents a fair and reasonable estimate, considering all of the circumstances on the date of the Execution of this Note, of the costs the Holder will incur by reason of such late payment"** (emphasis added).

Paragraph 4(b) reiterates the difficulty of ascertaining the damages associated with the loss of timely payments as the reason for the default interest rate set by the Promissory Note.

---

appear to be a business loan on paper. Ultimately, the dispute over which party misled the other regarding the purpose of the loan is a matter waived by terms of the Extension.

[3] Paragraph 2(a) says, in part: "The entire unpaid Principal Balance, plus accrued interest and other amounts payable under the Loan Documents, shall be due and payable in full on the Maturity Date." Paragraph 2(c) says, in part: **"THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH HEREIN."** (Emphasis in original). It goes on to state that a substantial portion of the original principal sum will be due at maturity "IN THE FORM OF A BALLOON PAYMENT" (emphasis in original).

-3-

Nowhere in Paragraph 4 is there any language regarding a late charge on the balloon payment itself.

Paragraph 14, titled "Usury", contains a usury savings clause that limits the interest charged to the applicable statutory rate in the event that a court holds the amount of interest charged "is in excess of applicable law."

The Moons began to struggle with payments almost immediately. At some points, Milestone advanced the taxes and insurance on the residence. About one year after the making of the Original Loan, on August 26, 2016, the Moons and Milestone entered into an agreement titled "Settlement Agreement, Indemnity, and First Amendment to Promissory Note Secured by Deed of Trust" (the "Extension") (Dkt. 1-27, 28)[4]. The Extension supplemented and amended the Original Loan. It did not replace it.

Milestone still did not have its own real estate broker or loan originator license, and this time the Moons were not represented by Mr. Fournier or any licensed real estate broker in the making of the Extension. The Extension states that the unpaid principal balance of the loan is $902,525.34 in no fewer than three parts of the document. The Extension extended the Maturity Date of the loan to July 2019, slightly lowered the initial interest rate to 11.05% and increased the monthly

---

[4] At that time there was no real dispute between the parties, so it is unclear why Milestone chose to call the agreement a "Settlement". Perhaps calling it the "Forbearance" that it was invites invocation of the usury law that ultimately doomed its strategy.

-4-

payments and default interest rate.  Paragraph 8 of the
Extension, titled "Late Charges," stated:

> Should any payment due hereunder not be
> received on or before the TENTH (10th) day
> after its due date (the 'Grace Period'),
> Borrower shall immediately pay to Lender,
> without notice or demand by Lender, a late
> charge calculated at TEN PERCENT (10.00%) of
> any payment then due, <u>including the final
> (balloon) payment.</u>"

Dkt. 1-28, p. 2 (emphasis in original).

The charge on the final balloon payment was a new addition
to the Extension, not part of the Original Loan.  Within the
same paragraph, the basis for these late charges was made clear:

> Borrower agrees that Lender will incur
> administrative costs and other damages not
> compensated by payment of interest as a result
> of any payment not being made when due and
> acknowledges that calculation of actual
> damages is extremely difficult and
> impracticable and that the foregoing amount is
> a reasonable estimate of those damages.

After executing the Extension, the Moons promptly began
missing loan payments, though some payments were tendered at
various times.

In March 2019, the Moons sought to refinance their
residence with a different lender and requested a payoff amount
from Milestone.  Milestone provided a payoff quote of

-5-

Case: 20-03117   Doc# 94-3   Filed: 01/06/22   Entered: 01/06/22 20:56:25   Page 7 of
43
Case: 20-03117   Doc# 74-3   Filed: 01/06/22   Entered: 01/06/22 11:53:25   Page 7 of 25

7

$1,288,792.28, which included what was initially called a "prepayment penalty" of $115,615.06. In later filings Milestone notes the phrase "prepayment penalty" was in error, and the amount represents a late charge on the principal balance in accordance with the Extension. The payoff was much higher than what the Moons had anticipated, and they were ultimately unable to refinance the loan.

### III. PROCEDURAL HISTORY

On November 18, 2019, the Moons filed a complaint in San Mateo superior court against Milestone, William R. Stuart ("William Stuart"); Bear Bruin Ventures, Inc. ("Bear Bruin"); and Evergreen Escrow, Inc. ("Evergreen") (collectively, "Defendants"). On February 14, 2020, the Moons filed an Amended Complaint against the same Defendants. The Amended Complaint seeks damages against the Defendants on four counts of alleged wrongdoing:

1. Declaratory Relief to determine the rights and obligations of the Moons under the Extension;

2. Breach of Contract against Milestone;

3. Fraud against Stuart, Milestone, and Bear Bruin;

4. Intentional Interference with a Contract by Milestone and Evergreen.

While the lawsuit was pending, Milestone began foreclosure proceedings. After originally issuing a temporary restraining order, the state court eventually denied the Moons' Motion for Preliminary Injunction on September 4, 2020. On September 10, 2020, the Moons filed a Notice of Appeal but on the same day, Mark E. Moon filed a bankruptcy petition. On October 16, 2020,

-6-

the Moons removed the Amended Complaint to this court via this adversary proceeding. Evergreen was voluntarily dismissed on August 12, 2021.

After rounds of discovery disputes and an attempt at settlement via the Bankruptcy Dispute Resolution Program, the Moons filed a Motion for Partial Summary Judgment on September 9, 2021 (Dkt. 36) ("Moon MPSJ") and Defendants filed a Motion for Summary Judgment on September 16, 2021 (Dkt. 43) ("Defendant MSJ").

The Defendant MSJ seeks summary judgment on each of the four counts of the Amended Complaint. Anomalously, the Moon MPSJ does not seek partial summary judgment on the four enumerated claims of the Amended Complaint but seeks judgment on three claims not found in the Amended Complaint:

1. The Extension violated usury law[5];
2. Milestone demanded an illegal acceleration penalty from the Moons;
3. Milestone illegally charged multiple late fees on a single loan payment.

The Moons also belatedly presented a new theory of interference with an economic advantage (Dkt. 49).

_____

[5] As noted above, the Moons did not raise the matter either as a claim or defense until the Moon MPSJ. While the Court recognizes that the Moons would not have been able to obtain relief by default on the usury claim in the Moon MPSJ because it was not initially plead as a claim, or part of a defense, all parties have briefed and treated the matter in such a way, and as such, the Court will consider the Defendants to have "entered the fray" and waived any objection on the issue of usury. For that reason, the matter is ripe for decision here and in the orders to follow.

-7-

1   The parties provided further briefing on the applicability
2 of this court's decision in *In re Arce Riverside LLC*, ==538 B.R.==
3 ==563== (Bankr. N.D. Cal. 2015) ("*Arce*") at the court's request.
4   For the reasons explained below, the court has determined
5 that as to the Moon MPSJ, the Moons should prevail on their
6 claims regarding usury and late fees but fail on their claim
7 regarding the acceleration penalty.  As to the Defendant MSJ,
8 Milestone should prevail as to the first claim for declaratory
9 relief and the Moons' belated claim for interference with an
10 economic advantage.  As to the breach of contract, intentional
11 interference with a contract, and fraud claims, disputes of
12 material fact remain to be resolved, and summary judgment must
13 be denied.

14 **IV.  STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

15   On a motion for summary judgment, the court must determine
16 whether, viewing the evidence in the light most favorable to the
17 nonmoving party, there are any genuine issues of material fact
18 as to any claim, part of claim, defense, or part of defense.
19 *Simo v. Union of Needletrades, Indus. & Textile Employees*, ==322==
20 ==F.3d 602, 609-10== (9th Cir. 2003); ==Fed. R. Civ. P. 56==.  Summary
21 judgment against a party is appropriate when the pleadings,
22 depositions, answers to interrogatories, and admissions on file,
23 together with the affidavits, if any, show that there is no
24 genuine issue as to any material fact and that the moving party
25 is entitled to judgment as a matter of law.  ==Fed. R. Civ. P. 56==.
26   Usury may be presented as either a claim or affirmative
27 defense under California law. *See Korchemny v. Piterman*, ==68 Cal.==
28 ==5th 1032== (2021).

-8-

# V. **DISCUSSION**

## A. **Usury Law and Exemptions**

The Moon MPSJ asserts that by virtue of the Extension, Milestone charged interest in violation of the California usury law.  The California Constitution fixes the maximum annual interest rate at 10% for "any loan or forbearance of any money, goods, or things in action." Cal. Const. Art. XV § 1.  "The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." *Ghirardo* at 798, quoting *Thomas v. Hunt Mfg. Co.* 42 Cal. 2d 734, 740 (Cal. 1954). "The essential elements of usury are: (1) The transaction **must be a loan or forbearance**; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo* at 798 (emphasis added).  On its face, therefore, the Original Loan violated the usury law unless an exemption saved it.

There are multiple exemptions to California's usury law, including loans made by nationally chartered banks and certain licensed businesses, Cal. Fin. Code § 22050, and pawnbrokers, Cal. Bus. And Prof. Code § 21626.  These and other exemptions are not at issue here.  The only exemption which is potentially applicable is Cal. Civ. Code § 1916.1 ("§ 1916.1"), which deals with loans or forbearances arranged by licensed real estate brokers:

-9-

For the purposes of this section, a loan or
forbearance is arranged by a licensed real
estate broker when the broker:

(1) acts for compensation or in expectation of
compensation for soliciting, negotiating, or
arranging the loan for another,

(2) acts for compensation or in expectation of
compensation for selling, buying, leasing,
exchanging, or negotiating the sale, purchase,
lease, or exchange of real property or a
business for another **and**

    (A) arranges a loan to pay all or any
    portion of the purchase price of, or of
    an improvement to, that property or
    business or

    (B) arranges a forbearance, extension, or
    refinancing of any loan in connection
    with that sale, purchase, lease, exchange
    of, or an improvement to, real property
    or a business, or

(3) arranges or negotiates for another a
forbearance, extension, or refinancing of any
loan secured by real property in connection
with a past transaction in which the broker
had acted for compensation or in expectation
of compensation for selling, buying, leasing,
exchanging, or negotiating the sale, purchase,

-10-

lease, or exchange of real property or a
business.

Cal. Civ. Code § 1916.1 (emphasis added). "A forbearance is
an agreement not to insist upon payment at the date of maturity
of a debt, or the giving of further time to pay." *Arce*, at 571,
citing *Buck v. Dahlgren*, 23 Cal. App. 3d 779, 785 (Cal. Ct. App.
1972). A forbearance can be agreed upon before the debt comes
due, *see, e.g., Jones v. Wells Fargo Bank*, 112 Cal. App. 4th
1527 (Cal. Ct. App. 2003) (forbearance arranged months prior to
Maturity Date of loan).

Here, the Extension modified the Original Loan in some
ways, including by extending the Maturity Date. It also lowered
the interest rate slightly, but not below the maximum permitted
by usury law if not eligible for an exemption. The Extension
must be considered a forbearance even if the parties neglected
to call it by its name.

"Note that there are only two instances of forbearance
mentioned [in § 1916.1]: in connection with a sale and in
connection with a past sale in which the broker acted as such."
*Arce,* 538 B.R. at 574. Neither applies here. The statute
"provides a restricted definition of the term "arranged" in
relation to a forbearance." *The Law of Usury*, Miller and Starr
California Real Estate 4th § 37:6. The statute painstakingly
sets forth the instances in which a forbearance negotiated by a
real estate broker would be exempt under usury law: when that
broker was previously involved in arranging the original loan
and that loan was in connection with a sale, lease, or other
transaction, or when that broker had previously arranged for the

-11-

13

sale, lease or other transaction for compensation.
§ 1916.1(2)(B), (3). Conspicuously absent from those instances is a scenario in which a forbearance is arranged on a simple loan of money secured by real estate, with no other sale, lease, or other transaction involved. This court cannot create an exemption here to save Milestone.

Mr. Fournier, the licensed real estate broker involved in the making of the initial loan, was not involved in the Extension. While Milestone belatedly attempts to argue that Carolyn Stuart, one of Milestone's owners, was a licensed broker involved in the creation of the Extension, this assertion is contradicted by Milestone's own prior documents, which show absolutely no involvement by Ms. Stuart in the making of the Extension. No licensed real estate broker was involved in the making of the Extension. However, whether a real estate broker (including Ms. Stuart) was involved in the making of the Extension is ultimately an immaterial fact, because the Extension is a forbearance of a type which falls outside of California's carefully crafted usury exemptions.

      i. ***Ghirardo* Involves a Credit Sale, Not a Forbearance**

Milestone relies on *Ghirardo*[6] for the proposition that the Extension is neither a loan or forbearance and therefore outside the bounds of usury law.

---

[6] Milestone also relies on *DCM Partners v. Smith*, 228 Cal. App. 3d 729, 278 Cal. Rptr. 778 (1991). *DCM* contains facts and reasoning nearly identical to *Ghirardo*. Any analysis of *Ghirardo* here is equally applicable to *DCM*.

Case: 20-03117   Doc# 74-3   Filed: 01/06/22   Entered: 01/06/22 20:15:58   Page 14 of 43

In *Ghirardo*, the defendant Antonioli[7] purchased real property in a seller-financed transaction (also known as a credit sale) in which a promissory note was executed in favor of the sellers. Antonioli then sold the property to another party, who then sold the property to plaintiff Ghirardo via another seller-financed transaction, in which Ghirardo would pay his seller, and that seller would then pay Antonioli. A payment dispute arose. Ghirardo and Antonioli came to a settlement which cut out the middleman and increased the interest rate. Later, Ghirardo sued Antonioli for charging a usurious interest rate on the new note. The *Ghirardo* court explained the negotiated promissory note fell outside usury law entirely, because the original transaction was a credit sale, not a loan or forbearance. In a credit sale, "the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing. This type of transaction . . . is not subject to the usury law because it does not involve a loan or forbearance." *Ghirardo* at 803 (quoting *Southwest Concrete Products v. Gosh Construction Corp*. 51 Cal. 3d 701, 705 (Cal. 1990)). Ghirardo argued the modified promissory note resulted in a forbearance. The court disagreed. Simply put, a re-negotiated credit sale is still a credit sale. It was not a loan.

Milestone likens the Extension to the type of settlement found in *Ghirardo*: an agreement which is not a loan or

---

[7] The Defendants were a married couple, the Antoniolis. The California Supreme Court referred to the Antoniolis in the singular, so this Court does so as well.

forbearance and therefore falls outside of usury entirely.
However, the facts of this case are much closer to what this
court previously encountered in *Arce,* which involved a simple
loan secured by real estate, and a subsequent forbearance that
ran afoul of § 1916.1.  For the reasons set forth above, the
Extension is likewise a forbearance.  It was not the extension
of a credit sale and is thus not comparable to *Ghirardo*.
Milestone's assertion that the Extension is something other than
a forbearance is incorrect.  The most critical element—a loan of
money followed by a forbearance—was what this was.

### ii.   The Extension is Not Exempt Simply Because the Original Loan was Exempt

Milestone also relies on *Ghirardo* for the premise that an
originally non-usurious transaction cannot be transformed into a
usurious transaction at a later point.  This again is a
misstatement of *Ghirardo*, which involved a type of transaction
that fell outside of usury because it was not a loan in the
first instance.  No modification of that agreement could
transform the transaction into a loan or forbearance of a loan.

The reliance on *Ghirardo* is also an incorrect statement of
law, since non-usurious loans *can* be transformed into usurious
forbearances under certain circumstances.  For instance, in
*Arce*, an originally non-usurious loan was transformed into a
usurious forbearance due to the increased interest rate and the
absence of any statutory exemption such as involvement of a
licensed real estate broker.  Upon determining that the
modification was a forbearance, this court concluded that the
forbearance did not fall within the exemptions of § 1916.1.

-14-

Were that so, the increased interest would not have violated usury law. Despite the anomalous result, this court reasoned that the Legislature "knew what it was saying and meant what it said" when it limited the real estate broker exemption to forbearances only in very limited contexts. *Arce*, 538 B.R. at 674.

Here, the loan providing for interest above ten percent is unlike *Ghirardo* (a credit transaction) or *Arce* (originally below ten percent). The loan was not non-usurious, but rather a usurious loan subject to an exemption. The difference between a non-usurious loan and a loan subject to an exemption is slight but distinct, and not just a matter of semantics. One is outside of usury law entirely, and the other is within usury law but subject to an exemption to that law. Once the exemption (no real estate broker involved) ceased to apply, the exemption disappeared, and the transaction became subject to the full consequences of the usury law.

The California General Assembly enacted § 1916.1 on the basis that "real estate brokers are qualified by the state on the basis of education, experience, and examination, and that the licenses of real estate brokers can be revoked or suspended." Cal. Stats 1983 Ch. 307, Sec. 2. The legislature was careful to only exempt those forbearances that were in connection with sales, leases, or other exchanges of property.

The Extension does not fit within the exemption for forbearances set forth in § 1916.1. A loan broker was not involved in the making of the Extension, and even so, the Extension was not in connection with a sale, lease, or other

-15-

type of exchange of property.  It makes no difference that the Extension slightly lowered the interest rate of the Original Loan: the bright lines of § 1916.1 are clear.  The law is equally clear that it does not matter if a creditor intended to stay within the usury exemption, and if the intent to loan a usurious amount of interest exists without an exemption, then the element of intent to commit usury has been met.

While the outcome may seem harsh, the court and the parties must keep in mind that the goal of all usury law is to prevent the making of usurious loans.  Hard-money lenders have options if they are not eligible for the protection of § 1916.1. Milestone had the option to get licensed, lower the interest rate, or foreclose on the property, however unappealing and consequential that would have been to the Moons.

The Extension's interest rate and default interest rate both violated California's usury law.  Due to Milestone's violation of usury law, Milestone is entitled only to the principal balance of the Extension minus the amount of usurious interest paid. *See, e.g., Westman v. Dye* 214 Cal. 28, 31-38 (1931); *District Bond Co. v. Haley* (1935) 2 Cal. 2d 308, 311; *Shirley v. Britt* 152 Cal. App. 2d 666, 670 (Cal. Ct. App. 1957); *Korchemny v. Piterman*, 68 Cal. App. 5th 1032, 1043 (Cal. Ct. App. 2021).

**B. The 10% Fee on the Balloon Payment**

Next, the Moons' MPSJ argues that the $115,615.06 charge associated with a 10% fee on the Moons' balloon payment, initially called an "acceleration penalty" by Evergreen, was an unlawful penalty.  This penalty was not part of the Original

-16-

Loan but was inserted into the terms of the loan by the Extension. Milestone contends the fee was a bargained-for and reasonable estimated amount of liquidated damages.

Both parties frame the issue of whether the 10% fee on the balloon is permissible in the context of liquidated damages. Upon its previous finding of usury, the court must first consider whether such the 10% fee should be deemed to be part and parcel of the interest the court has found to be usurious. The court concludes that the fee should be deemed separate from the interest (and default interest) set forth in the Loan and the Extension.

"Interest is the compensation allowed by law or fixed by the parties for the use, forbearance, or detention of money." Cal. Civ. Code § 1915. Liquidated damages are a pre-set measure of damages agreed upon by parties to a contract "[t]o avoid uncertainty and the cost of litigation if a breach occurs." *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, 152 Cal. App. 4th 1106, 1115 (2007) (internal citations omitted). The court concludes that the liquidated damages provision of the Extension stands separately from the interest charged by the Extension. Even if the loan were not deemed to be usurious, the court would still need to determine whether the liquidated damages provision, which is pegged solely to the principal balance of the Extension, is permissible.

"A provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was

-17-

unreasonable under the circumstances existing at the time the contract was made." *Id.*, quoting Cal. Civ. Code § 1671(b).

"A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Krechuniak v. Noorzoy,* 11 Cal. App. 5th 713, 722 (2017) (*citing Ridgley v. Topa Thrift & Loan Ass'n,* 17 Cal. 4th 970, 977 (1998)). Whether the damages are reasonable under circumstances is a "question of law when the facts are undisputed and susceptible of only one reasonable interpretation." *Krechuniak* at 723.

In *Poseidon*, the parties executed a promissory note that provided for interest-only monthly payments, and a final balloon payment. The promissory note stated that because any late payments would cause the lender to incur costs that would be "difficult or otherwise impractical to assess," a 10% fee would be imposed on every late-paid installment. The note was silent as to whether this fee applied to the balloon payment when due. The court found that even though a balloon payment may be considered an "installment," the 10% fee as applied to the balloon payment would be an unenforceable penalty under Cal. Civ. Code § 1671(b).

The original Promissory Note was like *Poseidon*, providing for late charges only on installment payments. The Extension, drafted without a broker, modified the language to include a late charge on top of the balloon payment.

-18-

While the language of the liquidated damages clause in both the Promissory Note and in the Extension states that calculation of damages is extremely difficult, that does not explain why a new 10% charge on a hefty balloon payment would suddenly be necessary to make Milestone whole in the event of default. Milestone is fully able to calculate the unpaid principal it is owed and the advances in taxes and insurance it made. Milestone argues that the 10% fee also contemplates the lost points and profit it would have made had it been able to re-lend the money owed. This belated suggestion of damages does not account for the 10% being chargeable whether the Moons were one day late or many months late. *Dobson Bay Club IIDD, LLC v. La Sonrisa de Diena, LLC*, 242 Ariz. 108 (Ariz. 2017) (finding a 5% fee on a loan's balloon payment to be an unenforceable penalty).

Accordingly, the $115,615.06 is an illegal penalty under Cal. Civ. Code § 1671(b).[8]

## C. <u>Multiple Late Charges</u>

The Moon MPSJ alleges that Milestone violated Cal. Civ. Code § 2954.4, which addresses "late payment charges on real estate loans encumbering single-family owner-occupied dwellings." This law provides that "[a] charge may not be imposed more than once for the late payment of the same installment. . . For the purposes of determining whether late charges may be imposed, any payment tendered by the borrower shall be applied by the lender to the most recent installment

---

[8] The court also presumes, but need not decide, that the fee on the balloon is also an illegal usury amount, similar to the "bonus" that was disallowed as usurious in *Jones v. Dickerman*, 114 Cal. App. 357 (1931).

-19-

due." Cal. Civ. Code § 2954.4(a)-(b). Loans arranged by a licensed real estate broker are exempt from this law. Sec. 2954.4(e).

Milestone does not dispute that its late fee practices would contravene § 2954.4, if not for the exemption provision of subsection (e). Unlike § 1916.1, § 2954.4 does not provide for specific instances in which forbearances must be treated differently.

Thus, because the Original Loan undisputedly involved a real estate broker, § 2954.4 does not apply to the late fees charged on either the Original Loan or the Extension.

The court agrees with Milestone's assessment. Even the Moons' Reply (Dkt. 61) indicates agreement with Milestone and states that "[t]here is *only one loan* in this case, the June 2015 $795,000 loan that is secured by the 2015 Deed of Trust. The September 2016 document by its terms, is an extension of that June 2015 loan. There is only one loan and all the payments by the Moons are covered by § 2954.4." (Dkt. 61 at 13).

There is no factual dispute here. Both parties agree that the Original Loan brokered by Mr. Fournier controls.

Accordingly, the court concludes as a matter of law that the late fee exemption of § 2954.4(e) applies to the Extension. Milestone is entitled to recover its unpaid late charges.

### D. Declaratory Relief

A party to a contract may seek declaratory relief in a California state court to determine each party's rights and obligations under a contract. Cal. Code Civ. Proc. § 1060. This relief is sought by the Moons in the Amended Complaint. Such

-20-

relief is too generalized when applied to the facts presented, and the types of rights and obligations which each party seeks to clarify are addressed by the rest of this decision.  The Moons are not entitled to any recovery on their First Count of the Amended Complaint, and Milestone is entitled to partial judgment on that claim.

### E. **Breach of Contract**

"A breach of contract is the wrongful, i.e., the unjustified or unexcused, failure to perform the terms of a contract." *Chen v. Paypal, Inc.*, 61 Cal. App.5th 559, 570 (2021).  The Amended Complaint alleges that Milestone breached its contract with the Moons "by demanding a payoff amount far in excess of the amount required by any contract, and demanding amounts that were illegal under the law" (Dkt 1-7, pg. 6).

The Extension entered by the Plaintiffs released any and all claims in existence prior to September 1, 2016.  Any breach of contract relating to acts by Milestone prior to the Extension has been waived.

It is an as-yet unanswered question whether the payoff requested in 2019 was indeed in excess of what was owed by the Moons.  Because the true amount of the payoff is unknown, and it is a factual question as to whether an incorrect payoff statement amounts to a breach on the part of Milestone, the court will deny the Defendant MSJ on that portion of the Second Count of the Amended Complaint.

### F. **Fraud**

The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of

-21-

falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004). The Moons allege Defendants committed fraud by inducing them to enter an Extension which represented more money than what the Moons owed to Milestone at the time and resulted in a too-high payoff amount in 2019. As stated above, the Moons knowingly released all claims related to actions taken by Defendants prior to September 1, 2016. However, the same material fact issue related to the breach of contract claim also remains for the fraud claim: whether in 2019 Milestone knowingly issued a false payoff amount to the Moons, and whether the Moons knew of or relied on the falsity of the payoff amount. The court will deny the Defendant MSJ on the Third Count of the Amended Complaint.

## G. **Intentional Interference with a Contract**

The elements of intentional interference with contract are "(1) a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004).

The Moons have made a showing that there is a factual dispute as to whether there was a valid contract between the Moons and the third party with which the Moons were seeking to refinance, and that production of such a contract is plausible. Because a material fact regarding the claim is in dispute, the

-22-

court will deny the Defendant MSJ on the Fourth Count of the Amended Complaint.

## H. Intentional Interference with an Economic Advantage

The Moons attempted belatedly to insert an additional claim for Interference with an Economic Advantage in their Opposition to the Defendant MSJ (Dkt. 49) in case the court finds there is merely a non-binding intention to enter into a contract. Because such a claim was not plead in the Amended Complaint, or even the Moon MPSJ, the Moons cannot prevail and must move forward only on their initially plead claim for Intentional Interference with a Contract. Milestone is entitled to partial summary judgment on that unnumbered claim.

## VI. DISPOSITION

For the foregoing reasons:

A. The Moon MPSJ will be GRANTED on the usury claim and on the claim regarding the 10% acceleration charge on the balloon payment; in all other respects it will be DENIED. What the Moons have paid in interest will be credited to the principal and all accrued interest, at least as of the Maturity Date of the Extension, will be eliminated.

B. Because of the usury savings clause and the unique history of this case and the conduct of the parties, the court will not consider punitive or other damages.

C. After further briefing and argument, or consent by the parties, the court will determine what Milestone is entitled to by way of reimbursement of taxes, insurance and other advances or costs. This would result in

-23-

amount owing as of the July 31, 2019 Maturity Date of
$902,52.34 MINUS interest actually paid through July 31,
2019, PLUS insurance, taxes and other costs advanced by
Milestone.

D.  After further briefing and argument, or consent by the
parties, the court will determine the amount, if any, of
interest accrued and owing after the Maturity Date of
the Extension.

E.  The Milestone MSJ will be GRANTED, in part, on the claim
for late charges and on the First Count of the Amended
Complaint.

F.  The Milestone MSJ will be DENIED as to the Second,
Third, and Fourth Claims of the Amended Complaint.

G.  After further briefing and argument, or consent by the
parties, the court will issue orders consistent with the
foregoing.

**END OF MEMORANDUM DECISION**

-24-

COURT SERVICE LIST

ECF Recipients

-25-



Signed and Filed: April 27, 2022

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 20-30711-DM |
| | ) |
| MARK E. MOON, | ) Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |
| E. MARK MOON and LORI MOON, | ) Adversary Case No. 20-03117-DM |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MILESTONE FINANCIAL, LLC, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to the court's *Memorandum Decision Regarding Cross-Motions for Summary Judgment*[1] ("Memorandum") (Dkt. 72), the

---

[1] By Docket Order entered on April 4, 2022, the court acknowledged its error on page 8 of the Memorandum. That portion of the Memorandum states that Plaintiffs will prevail on their claim for late fees but fail on the claim regarding the acceleration penalty. This statement was in error. The Memorandum later correctly set forth that Plaintiffs fail on

-1-

court held a hearing on April 8, 2022 regarding final issues surrounding Plaintiffs' *Motion for Partial Summary Judgment* ("Moon MPSJ") (Dkt. 36) and Defendant Milestone Financial, LLC's ("Milestone") *Motion for Summary Judgment* ("Milestone MSJ") (Dkt. 43). Parties submitted briefing and argued at the hearing the following topics: (1) post-maturity interest; (2) Plaintiffs' request for reconsideration of the court's prior decision regarding treble damages; (3) collectability of administrative fees; and (4) Plaintiffs' request for reconsideration of the court's prior determination regarding late fees. The court took the matters under consideration thereafter.

A. <u>Post-Maturity Interest is Due</u>

Under California law, once a usurious loan matures, interest accrues on the matured loan, so long as the amount due is certain or capable of being made certain. *See Epstein v. Frank*, 125 Cal.App.3d 111, 121 (Cal. Ct. App. 1981) ("The payee of a noninterest-bearing note is entitled to interest at the legal rate from the date the note matures until the date of judgment." [citations omitted]); *Parvin v. Davis Oil Co.*, 655 F.2d 901, 905 (9th Cir. 1979) ("California law requires awards of such interest as a matter of law, where, as here, the sum is certain").

Plaintiffs' initial *Status Conference Statement* (Dkt. 73) asserts a variety of equitable arguments as to why post-maturity

_____

their claim for late fees and prevail on the acceleration penalty claim. The court apologies for any confusion caused by the error.

-2-

interest should not accrue on the defaulted and long-matured loan, including estoppel because Milestone could have been paid off earlier, failure to mitigate, breach of contract, and essentially, Milestone's unclean hands. However, Plaintiffs present no law which shows that these equitable considerations, were the court to accept them, could overcome settled California law regarding post-maturity interest on a usurious loan.

Next, Plaintiffs' *Memorandum for April 8, 2022 Status Conference* (Dkt. 77) argues that post-maturity interest cannot be recovered because the amount due at the loan's maturity was not actually calculable. Plaintiffs contend that because the amount due at maturity was unclear due to the issues resolved by the court, the amount owed by Plaintiffs was incapable of being made certain, citing cases including *Iverson v. Spang Indus.*, 45 Cal.App.3d 303 (Cal. Ct. App. 1975) and *Fox v. Peck Iron & Metal Co.*, 25 B.R. 674 (Bankr. S.D. Cal. 1982).

The facts of these cases are all quite different from the facts of this loan and underlying dispute. In *Iverson v. Spang Indus.*, the court found that the amount owed on a breached lease could not be calculated until property damage liability was allocated among the parties. *Iverson*, 45 Cal.App.3d at 306. *Fox* involved a sale and lease-back scheme that the court later determined to be a usurious secured loan. The court analyzed the creditor's interest under 11 U.S.C. § 506 to determine the secured portion of the creditor's claim, and to determine how much of that secured claim had been overpaid by the debtor. As a result, the court found that usurious loan itself accrued post-maturity interest, but that the overpayments, which could

-3-

only be calculated after determining the extent of the security interest, did not accrue post-maturity interest. *Fox v. Peck Iron and Metal Co., Inc.*, 25 B.R. at 698.

If anything, the loan in this case is most analogous to the usurious loan described in *Fox*, which did accrue post-maturity interest while the Debtor's overpayments did not. Here, the court need not allocate liability damages or examine secured versus unsecured interests. The court's only role is to determine what parts of the loan are usurious or otherwise inapplicable under California law, not unlike the court in *Fox* first having to determine whether the lease-back was a loan at all and whether the payments made on the purported lease constituted interest payments above the threshold for usury. Additionally, this case has no issues of material facts regarding what is owed, only legal ones, which also justifies the accrual of post-maturity interest.

The amount due under the loan outside of usurious interest is calculable and has been calculated. Post-maturity interest at 7% per annum shall be applied from the date of maturity on July 31, 2019.

**B. Treble Damages Are Not Appropriate**

Plaintiffs also request that the court reconsider its prior decision regarding treble damages. "The recovery of treble interest is a cumulative remedy so that the borrower can recover treble the interest paid within one year of the commencement of the suit. . ." *Id.* at 692 (explaining Cal. Civ. Code § 1916-

-4-

3(a)) (internal citations omitted)[2].  Plaintiffs argue that the court's decision based in part on the general savings clause of the Original Loan[3] was in error.  Instead, the court should solely look to the 2016 Extension, which contains a savings clause pertaining only to default interest.

As the court has already expressed, "[t]he Extension supplemented and amended the Original Loan.  It did not replace it."  See Memorandum at p. 4.  If anything, the general savings clause of the Original Loan and the savings clause directed toward the new default interest rate each apply here.

Plaintiffs also argue that the comparative guilt of the parties favors the award of treble damages.  As the Plaintiffs note, "the award of treble damages depends on the relative guilt of the parties initiating the transaction and is always within the trial court's wide discretion." *Id.*  The Plaintiffs then go on to describe the alleged misconduct of Milestone.  This re-telling of history neglects the Moon's own actions in initiating the Original Loan and Extension.  Real questions remain as to whether the Plaintiffs willfully obtained a business purpose loan for personal use.  The court is mindful that it was the Plaintiffs' initial and near immediate default on the Original Loan that culminated in the making of the Extension that rendered the loan usurious, and that Extension even lowered the interest rate to be paid.  A balancing of guilt reveals no clear winners here.  Additionally, this case involves such a complex

---

[2] The Plaintiffs paid interest in the amount of $49,889.50 in the year prior to filing suit against Milestone.
[3] "Original Loan" and other capitalized terms not defined in this Order are defined in the Memorandum.

-5-

and under-discussed point of usury law that neither side cited to the court its own most relevant case, *In re Arce Riverside, LLC*, ==538 B.R. 563== (Bankr. N.D. Cal. 2105).  This case is not well-suited for consideration of treble damages.

It was within the court's wide and sound discretion to decline an award of treble damages.  The decision shall not be reconsidered.

### C. Late Fees

Plaintiffs request the court reconsider its prior determination regarding late fees.  As a reminder, the only request made by Plaintiffs in the Moon MPSJ regarding late fees was for a finding that "the imposition by Milestone of multiple late fee penalties on a single missed payment is a violation of Calif. Civil Code § 2954.4."  Plaintiffs now request that the court reconsider this decision pursuant to ==Cal. Bus. & Prof. Code § 10242.5== ("Section 10242.5").

This request is, as Milestone correctly points out, not based on previously undiscoverable law or new facts, but solely as a response to the court's analysis of the facts and law that the parties had already presented, and that Plaintiffs had specifically framed.  Now that the court has rendered a decision based on those facts and law in a way that is not favorable to the Plaintiffs, they appear to seek another bite of the apple, and instead argue that late fees are barred by Section 10242.5, which applies to loans brokered by licensed mortgage brokers and contains prohibitions regarding late charges that are nearly identical to Cal. Civ. Code. § 2954.4.

-6-

1   It is unclear to the court why Plaintiffs have only
2   presented or argued the applicability of Section 10242.5 in the
3   second round of post-Memorandum briefing.

4       The court finds any request regarding the treatment of
5   multiple late charges on one late payment to be moot, as there
6   would be no practical effect to such reconsideration on the
7   amounts owed to Milestone.  Milestone's treatment of late fees
8   prior to September 1, 2016, shall not be revisited under any
9   circumstance as this court has already determined that by
10  entering into the Extension, the Plaintiffs released any and all
11  claims relating to the acts of Milestone prior to the Extension,
12  including charging multiple late fees on late payments. See
13  Memorandum at p. 21.

14      A reconsideration regarding multiple late charges would
15  also not reduce the amount owed by Plaintiffs on account of
16  monthly payments after September 1, 2016.  Plaintiffs also
17  attempt to expand their initial request for a finding regarding
18  multiple late charges by arguing that any late charge on a
19  usurious interest payment is wrongful.  This belated point is
20  also moot.  Milestone agrees with Plaintiffs that late fees
21  cannot be charged on usurious interest-only installment
22  payments, which is why its submissions regarding amounts
23  currently due on the loan do not include any payments or late
24  fees owed from September 1, 2016 to July 31, 2019.

25      **D. <u>Administrative Charges</u>**
26      The parties also disagree on the applicability of a 10%
27  "administrative charge" on advances of property taxes and
28  insurance.  Plaintiffs argue that because the operative deed of

-7-

trust does not discuss administrative charges for any advances made, such charges should not be payable. After relying on the incorrect document, Milestone appears to admit that specific administrative charges on advances are not provided for in the deed of trust but are instead recoverable as late fees.

While the court has expressed above its distaste for the Plaintiffs' late presentation of applicable law, it does appear that Section 10242.5 would bar the collection of administrative charges. That section does allow for a 10% charge on an amount due on a loan, but only "as a percentage of the increment of any installment due that is attributable to principal and interest." Section 10242.5(a). Milestone has clarified the advances of taxes and fees were amounts also due under the terms of the loan. None of those amounts are attributable to either the principal or interest due under the loan, meaning no amount could be charged as a late fee pursuant to Section 10242.5(a).

Accordingly, the court shall disallow the addition of administrative loan charges to the amount owed on the loan.

**E. Amounts Currently Owed by the Plaintiffs**

Accordingly, using the amounts agreed upon by the parties regarding the loan's remaining principal, payments made by the Plaintiffs, and advances made by Milestone (without any administrative charges), plus post-maturity interest, the court finds the following amount owed by the Plaintiffs as of March 10, 2022:

| Principal as of September 1, 2016 | $902,525.34 |
|---|---|

-8-

| | |
|---|---|
| Plaintiffs' Payments Before Maturity | ($224,548.50) |
| Milestone's Advances Before Maturity | $40,517.04 |
| Plaintiffs' Payments After Maturity | ($113,007.50) |
| Milestone's Advances After Maturity | $15,792.68 |

The total amount due continues to accrue interest at the legal rate of 7% per annum on the unpaid principal balance after adjustment downward for monthly payments.

**F. Conclusion**

For the foregoing reasons and the reasons stated in the Memorandum, the court HEREBY ORDERS the following:

1.   The Moon MPSJ is GRANTED on the usury claim and on the claim regarding the 10% acceleration charge on the balloon payment.

2.   The remainder of the Moon MPSJ is DENIED.

3.   The court declines to reconsider its prior determination and thus DENIES Plaintiffs' request to apply treble or any other punitive damages to its finding of usury.

4.   The court agrees to reconsider its prior determination and thus GRANTS Plaintiffs' request for reconsideration on the claim of late fees as the provision applies to administrative charges.

5.   Milestone is not entitled to administrative charges based on the amounts it advanced on behalf of Plaintiffs.

6.   The Milestone MSJ is GRANTED as to the First Count of the Amended Complaint.

-9-

7.  The Milestone MSJ is DENIED as to the Second, Third, and Fourth Claims of Plaintiffs' Amended Complaint.

8.  The amount to be paid by Plaintiffs is calculable, thus post-maturity interest is applicable under California law.

9.  Milestone is entitled to post-maturity interest in the amount of 7% per annum beginning August 1, 2019, with the accrual of such interest to reflect the corresponding reduction in that interest and principal following monthly payments by the Moons. The parties are directed to determine the amount owed by Plaintiffs according to the spreadsheet previously provided by Milestone at Dkt. 76, Ex. 1, which provides for payments through March 10, 2022, with administrative charges excluded, but does not (but should) reflect credits for Moons payments resulting in the reduction of principal after that date and the corresponding reduced accrual of interest thereafter.

10. Plaintiffs shall inform the court and Milestone on or before May 13, 2022, whether they intend to pursue the remainder of their claims. If not, the court shall enter a final judgment concluding this adversary proceeding and the parties should submit an agreed form of final judgment. If so, the court shall conduct a further status conference on May 27, 2022 at 1:30 p.m. to discuss with counsel the continued conduct of this case.

-10-

```
 1   11.  Plaintiffs shall tender the amount due to Milestone
 2        consistent with the calculations called for in
 3        Paragraph 9 on or before June 24, 2022.  If payoff is
 4        not tendered by this date, Milestone may request
 5        relief from stay.
 6                      **END OF ORDER**
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

-11-

COURT SERVICE LIST

1

2  ECF Recipients

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-



Signed and Filed: May 25, 2022

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re E. MARK MOON, Debtor, ) | CASE NO.  20-30711 |
| _____ ) | CHAPTER 11 |
| E.  MARK MOON AND LORI H. ) | ADV NO. 20-03117 |
| MOON ) | |
| ) | |
|      Plaintiffs, ) | |
|  v. ) | |
| Milestone Financial, LLC, a California ) | **JUDGMENT FOR PLAINTIFFS** |
| Limited Liability Company, William R. ) | |
| Stuart, Bear Bruin Ventures, Inc., a ) | |
| California Corporation, Evergreen ) | |
| Escrow, Inc. ) | |
| ) | |
|     Defendants. ) | |
| ) | |
| _____ ) | |

1

**JUDGMENT FOR PLAINTIFFS**

This case came before the Court on cross-motions for summary judgment. Plaintiffs have elected to have a final judgment entered in the adversary action based on the Court's ruling on the Second Cause of Action against Milestone Financial LLC ("Milestone"). Pursuant to this Court's Order entered April 27, 2022, Plaintiffs shall have judgment on the Second Cause of Action which reduces the amount owed to Milestone secured by the real property located at 11 Mandalay Court, Redwood City, CA 94065 (the "Property").

Milestone is entitled to post-maturity interest in the amount of seven (7%) per annum beginning August 1, 2019. Plaintiffs are entitled to credits for amounts paid prior to the maturity of the loan on July 31, 2019, in the amount of Two Hundred Twenty Four Thousand Five Hundred Forty-Eight Dollars and fifty cents ($224,548.50). Milestone is entitled to pre-maturity credits in the amounts of Nine Hundred Two Thousand Five Hundred Twenty-Five Dollars and thirty-four cents ($902,525.34) in principal as of September 1, 2016, and Forty Thousand Five Hundred Seventeen Dollars and four cents ($40,517.04) of advances between September 1, 2016 and August 1, 2019. Pursuant to the Court's April 27, 2022 Order, based on the Court's ruling, the calculation of the amount due at maturity on August 1, 2019 was Seven Hundred Eighteen Thousand Four Hundred Ninety-Three Dollars and eighty-eight cents ($718,493.88). As of May, 13, 2022, the Plaintiffs are entitled to credit for payments after August 1, 2019, in the amount of One Hundred Twenty-Six Thousand Three Hundred Two Dollars and fifty cents ($126,302.50), and Milestone is entitled to credit for post August 1, 2019, advances of Fifteen Thousand Seven Hundred Ninety-Two Dollars and sixty-eight cents ($15,792.68)

1

**JUDGMENT FOR PLAINTIFFS**

41

and post August 1, 2019 interest of One Hundred Forty-Three Thousand Eighteen Dollars and eighty-five cents ($143,018.85). Milestone is entitled to daily interest at seven percent (7%) per annum of One Hundred Forty Dollars and eighty-two cents ($140.82) from May 13, 2022, until the obligation is paid in full, subject to any future advances or other credits based on the loan documents. Therefore, the Court finds the following amount owed by Plaintiffs to Milestone as of May 13, 2022, secured by the Property:

| Principal as of September 1, 2016 | $902,525.34 |
| Plaintiffs Payments Before Maturity of August 1, 2019 ("Maturity") | ($224,548.50) |
| Milestone's Advances Before Maturity | $40,517.04 |
| Plaintiffs' Payments After Maturity | ($126,302.50) |
| Milestone's Advances After Maturity | $15,792.68 |
| Milestone's 7% Interest After Maturity | $143,018.85 |
| Total Owed to Milestone as of May 13, 2022 | $751,009.91 |

The obligation shall bear $140.82 interest per day from May 13, 2022, until the obligation is paid in full. If payment is not tendered by June 24, 2022, then Milestone may request relief from the automatic stay. All other terms and conditions of the note, deed of trust, Settlement Agreement, Indemnity and First Amendment to Promissory Note secured by Deed of Trust and other loan documents remain in full force and effect.

All remaining causes of action are dismissed with prejudice.

1

**JUDGMENT FOR PLAINTIFFS**

The Court reserves jurisdiction to hear and determine a motion for attorneys' fees to be awarded to Plaintiffs as the prevailing party.


**END OF ORDER**

1

**JUDGMENT FOR PLAINTIFFS**